# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

CRAIG A. THOMPSON,

                         Petitioner,           :     Case No. 3:18-cv-117

       - vs -                              District Judge Thomas M. Rose
                                           Magistrate Judge Michael R. Merz

KEITH FOLEY, Warden,
  Grafton Correctional Institution[1]

                                 :
                  Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Craig Thompson, is ripe for decision on the merits.  The Court has before it the Petition (ECF No. 1), the State Court Record as originally filed (ECF No. 11), the Return of Writ (ECF No. 12), the Supplemental State Court Record (ECF No. 69), and Petitioner's Traverse (ECF No. 88).

**Litigation History**

On March 5, 2013, Thompson was indicted by a Montgomery County grand jury on one count of complicity to commit burglary in violation of Ohio Revised Code § 2911.12(A)(1) and

---

[1] Petitioner has notified the Court of his transfer to Grafton Correctional Institution (ECF No. 94).  The caption is ordered amended as set forth above.

2923.03(A)(2)(Indictment, Count Three, State Court Record, Ex. 11, PageID 39). Thompson was jointly indicted with Bradley Burns who was charged with burglary in Count One and abduction in violation of Ohio Revised Code § 2905.02(A)(2) in Count Two.

After a mistrial in April 2014, Thompson filed a motion to dismiss on double jeopardy grounds which the trial court denied. The Second District Court of Appeals affirmed the denial. *State v. Thompson,* 2014-Ohio-5583 (Ohio App. 2nd Dist., Dec. 19, 2014), appellate jurisdiction declined, 143 Ohio St. 3d 1405 (2015). A second jury found Thompson guilty as charged and he was sentenced to six years imprisonment. On direct appeal the Second District affirmed. *State v. Thompson*, 2016-Ohio-7521 (Ohio App. 2nd Dist. Oct. 28, 2016), appellate jurisdiction declined, 149 Ohio St. 3d 1408 (2017).

The Return of Writ recounts numerous additional filings in the Second District and in the Supreme Court of Ohio (ECF No. 12, PageID 2163-66). These will be referred to herein only as needed.

On January 11, 2017, Thompson filed an application to reopen his direct appeal under Ohio R. App.26(B)(ECF No. 11, Ex. 44). The Second District denied that application originally (*Id.* at Ex. 47) and on reconsideration (*Id.* at Ex. 49). The Supreme Court of Ohio declined appellate review. *Id.* at Ex. 53.

On February 16, 2017, Thompson filed a petition for post-conviction relief under Ohio Revised Code § 2953.21. *Id.* at Ex. 54. The trial court denied the petition. *Id.* at Ex. 57.

Thompson filed a second petition under Ohio Revised Code § 2953.21 on June 5, 2018 (Petition, State Court Record, ECF No. 11-1, Ex. 67). The trial court granted the State summary judgment (Decision, Supp. State Court Record, ECF No. 69, Ex. 76). Thompson appealed and the Second District affirmed. *State v. Thompson*, 2019-Ohio-5140 (Ohio App. 2d Dist. Dec. 13, 2019), appellate jurisdiction declined, 2020-Ohio-3365 (Jun. 23, 2020).

Thompson filed his Petition for habeas corpus in this Court on April 12, 2018, pleading the following grounds for relief:

> **Ground One**: The trial court committed prejudicial error in overruling appellant's pretrial motion to suppress.

> **Supporting Facts**: The court made an erroneous ruling by overruling the defendant's motion to supress [sic] where the ruling was adverse to Thompson based off bias of the judge. Thompson did not consent to the search of his vehicle although the police searched anyway. Thompson was detained by police during a traffic stop where he was question by the police for over 3 hours before being escorted to District 10 headquarters where questioning continued for an additional 2 and a half hours. Police claim to have pulled Thompson over for a minor traffic violation yet Thompson was detained and questioned for over 6 hours. Thompson was not read his *Miranda* warnings yet statements made to police were still admitted at trial. Thompson had issued a subpeona [sic] for the in car cruiser cam recordings to support his assertions of an illegaql [sic] search and seizure, but the Sheriffs Department deleted the recordings in violation of direct orders from the Sheriff himself. All evidence obtained from the traffic stop should have been ruled as inadmissable [sic] at trial but the motion was overruled.

> The lower court ruled that *Miranda* is only necessary when a reasonable person considers their situation to be in custody. However, the courts ruled that since Thompson did not testify, they did not know what Thompson was thinking. The rule does not pertain to Thompson himself but what a reasonable person would think. Therefore, the courts applied a subjective view and not an objective view.

> After Thompson was stopped for his traffic violation, he was placed into the back of a police cruiser and questioned by the Deputy for several hours on the side of the road. Thompson was not allowed to possess his own cell phone or get out of the car without an escort by serveral [sic] deputies. Thompson's movements were seriously diminished.

> After several hours of questioning at the scene of the traffic stop, the Deputy transported Thompson to the District 10 headquarters for further questioning with Detective Saunders. Upon arrival at headquarters, Thompson was escorted into a room with one way in and one way out. Saunders sat himself between Thompson and the door and began asking more questions of Thompson.

Saunders questioned Thompson about his relationship with the primary offender Bradley Burns. Thompson explained that he knew him and that the two were somewhat friends. Thompson admitted that he had seen Burns earlier that evening when Burns had asked for a ride to Meijer. Thompson admitted to taking Burns to Meijer and then told Detective Saunders that he had dropped Burns off at his girlfriends house in Huber Heights. Thompson changed his story as the interview continued and finally admitted that Thompson had dropped Burns at Meijer and had not seen him since.

During the interview Saunders asked Thompson why he was sitting on Heather Hollow (the street where the crime occurred) that night. Thompson told Detective Saunders that he was sitting in his truck waiting on his girlfriend to come back into town so he could see her.

Thompson stated that due to the amount of time he waited, he had fell [sic] asleep waiting for her. Thompson then told Saunders that when the police arrived in the area they began shining their lights into the truck of Thompson and woke him up. Thompson admitted that he had been laying back in his seat sleeping.

These statements would prove to be very detrimental to Thompson at trial. Thompson had not been given *Miranda* warnings before making these statements and as Detective Saunders would testify later, Saunders did not read Thompson his rights because "his father is in law-enforcement and Thompson knew his rights."

After the judge made the ruling the judge recussed [sic] himself after a complaint was filed with the Ohio Supreme Court alleging that the judge had had *ex parte* conversations with the victim in regards to Thompson's punishment. The new judge denied the original counsel's request to revisit the Motion to Supress [sic] and allowed all evidence against Thompson to be admitted at trial despite Constitutional Violations. Prior to the second trial, Thompson's new counsel never even filed a new motion to supress [sic] or an appeal on the decision from the previous Motion to Supress [sic].

(Petition, ECF No. 1, PageID 6-7).

**Ground Two**: The trial court committed prejudicial error in admitting hearsay evidence not subject to proper authentication.

**Supporting Facts**: The trial court allowed the admittance of text messages without proper authentication as the messages were prepared for trial and were thus "testimonial". Bathini claims to have

4

taken her phone to the prosecutor to retreive [sic] messages from within her phone. She claims that an "I.T." guy in the prosecutor's office pulled over eighty pages of texts from Thompson. Bathini was the only person to authenticate the messages although she is not the keeper of records and admitted to deleting her side of the conversation thus presenting only testimonial evidence to the jury without a keeper of the records, or the "I.T." guy, authenticating that the messages shown were from Thompson at all. The Confrontation Clause of the Fourth [sic] Amendment would require proper authentication. Thompson was prejudiced by allowing a testimonial conversation, prepared only for trial, to be heard by the jury.

*Id.* at PageID 7-8.

**Ground Three**: Appellant was subject to the ineffective assistance of counsel as guaranteed to him under both the Sixth and Fourteenth Amendments.

**Supporting Facts**: Thompson's had retained counsel (Thomas Hansen) after being charged with one count of Complicity to Commit a Burglary. During the arraignment, and the Motion to Supress [sic], counsel failed to call any witnesses to aid the Defense, including Thompson himself.

Thompson had asserted that the police performed an illegal search and seizure of his vehicle. While counsel tried to obtain the recordings from the Deputies in car cruiser cams, the Deputy contended that the tapes were deleted in accordance to procedure. With the cruiser cam videos being intentionally deleted in an effort to cover up the police shortcomings, the only possible remedy counsel had was to put Thompson on the stand to refut [sic] the testimony that Thompson had agreed to the search. Counsel failed to call Thompson or other witnesses to aid in Thompson's defense.

Thompson had also supplied counsel with physical evidence to impeach statements that the tapes were erased in accordance with procedure. (Thompson had a copy of the policy and procedures from the sheriffs office) In fact, the orders of the Sheriffs office specifically state that all evidentiary tapes are to be kept until the conclusion of all court matters, including civil. The deputy did not keep the tapes, and by not putting Thompson on the stand, Thompson was denied his right to effective assistance of counsel. An attorney doing any investigation would have learned that the Deputy had to attend a 2 day seminar on the procedures for in car cruiser cams and there are sign-in sheets to prove his attendence [sic]. Counsel did

no such investigation and did not impeach the witness with the evidence available.

Thompson also provided counsel with a witness that would impeach state witnesses and contradict the deputie's [sic] theory that Thompson was free to leave and therefore was not qualified for *Miranda* warnings. As the deputy allowed Thompson to speak to his wife on speakerphone from the back of the police cruiser, to which Thompson told his wife he was being held by the police and they would not let him go. Thompson's wife testified in the first trial to this fact, but was forbidden in the second trial. Counsel should have put Thompson's wife on the stand in the Motion to Supress [sic] but never even spoke to Mrs. Thompson until the Motion to Supress [sic] was overruled.

*Id.* at PageID 8-9.

Added by amendment:

During the Motion to Suppress, the arresting officer, Deputy Baranyi, testified that Thompson gave him permission to search the truck. The deputy testified that he spotted an invoice on a clipboard on the petitioner ' s backseat. This invoice became the link which became the reason Thompson was investigated further.

Due to the testimony, implicating 'plain view' the invoice was allowed into evidence. However, defense Counsel Thomas Hansen had in his possession, the police reports from the Deputy which were written the morning of the arrest. The report shows that Thompson gave permission to obtain a marijuana pipe from a specific location. After obtaining the pipe, the Deputy notes that he searched a clipboard located in the backseat. Through this additional search, the Deputy located the invoice IN the clipboard and not ON as he had testified.

Counsel did not use the exculpatory evidence to impeach the testimony of the Deputy, nor did he submit the reports into evidence.

(ECF No. 67-1, PageID 2615-16.)

**Ground Four**: If the court finds that appellate counsel failed to argue important constitutional violations of Thompson's right during the direct appeal, then Thompson was denied effective assistance of counsel on appeal.

**Supporting Facts**: Appellate counsel failed in his duties to represent Thompson to the best of his abilities. Counsel filed his

entire brief based off one, two-hour meeting with Thompson, and ignored several issues Thompson wanted to address in the direct appeal [sic].

Counsel failed to fully investigate the claims in which Thompson had his Constitutional Rights violated. When counsel submitted a brief to the Appellate Court, he failed to present a complete record of the assignments of error being presented. There were documents that supported Thompson's claims to be raised in a Direct Appeal and a reasonable investigation by an attorney would have uncovered such evidence, yet appellate counsel failed in his duties to perform.

Thompson was unable to be a part of the appeals process and was denied his Constitutional Right to due process as well as his Sixth Amendment right to effective assistance of counsel.

*Id.* at PageID 10.

**Ground Five**: Cumulative bias on part of the trial judge.

**Supporting Facts**: The trial judge had initiated the plea bargain proceedings and encouraged Thompson to plead guilt [sic] before trial began. The judge had already decided Thompson was guilty and took a partisan position regarding Thompson's guilt. Threats were made by the judge, directed at defense counsel, and by association Thompson, during a pretrial meeting in chambers. Affidavits were filed to the Supreme Court of Ohio as Thompson sought the disqualification of the judge.

There were also several instances during the trial where the judge stated she believes the prosecution over defense counsel, thus dismissing a relevant objection pertaining to *Brady* Violations.

*Id.* at PageID 11.

**Ground Six**: Prosecutorial Misconduct.

**Supporting Facts**: During the introduction of evience [sic] mainly the text messages between Thompson and Bathini, the prosecution presented several pages of texts that defense counsel objected to because the pages being shown to the jury were not given to the defense as part of the discovery.

The prosecution then made several comments during closing argument that were erroneous, unfounded, unsubstantiated and were injected as his personal opinion. During closing arguments, the

7

prosecution stated to the jury that Thompson had told Detective Saunder that he knew police were in the area and when they shined their lights in his truck, he ducked down to avoid being seen. This statement was a misrepresentation of what Thompson had told the Detective during the interview. The statement should not have been admitted anyway since Thompson had not been read his rights. The prosecution went on to say "and why would someone who is doing nothing illegal duck down to avoid being seen? Because that's what common thieves do.' This expert analysis by the prosecution influenced the jury to believe in Thompson's guilt.

The prosecutor in conclusion instructed the jury to remember what Burns told Detective Saunders, "Yeah I did it. And I did it with Craig Thompson." either Burns nor Detective Saunders ever testified to this change. There was nothing in the record, statements, interview notes or prior testimony to this statement ever being said by any person relevant to the trial.

Although trial counsel failed to object to statements made by the prosecution in closing arguments, these statements worked to Thompson's actual and substantial disadvantage and infected his trial with Constitutional error. The comments were made during the state's rebuttal and Thompson's attorney was unable to respond before the jury retired for deliberations. Due to the tack of an objection by Thompson's counsel, the claim was only viewed for plain error to determine if the comments had a decisive effect on the outcome of trial.

During the sentencing phase, the prosecution submitted a sentencing memorandum that would usually be answered by the defense. However, upon review of the document submitted to the court, the prosecutions' certificate of service shows that the document was served upon the wrong defense attorney thus denying Thompson, or his counsel, the opportunity to dispute the memorandum. The prosecution continued this malicious hinderance of Thompson's Constitutional rights to Due Process after trial with all motions filed after conviction, including but not limited to his Post-Conviction Petition. The prosecution intentionally hindered Thompson's receiving of filed documents by not filing pursuant to the Civil Rules, or Criminal Rules of Procedure prescribed by State and Local Rules.

*Id.* at PageID 13.

**Ground Seven**: Craig Thompson's sentence is void and/or voidable because he was denied the effective assistance of counsel when his

attorney unreasonably failed to counsel him to accept the State of Ohio's offer of 3 years with judicial release probability after 6 months in exchange for his guilty plea.

**Supporting Facts**:  Prior to trial Thompson's counsel James Staton had informed Thompson that a plea offer had been made. That offer was 36 months with judicial release probability after a mere 6 months and the court agreed to postpone sentencing until after the holidays so that Thompson could spend them with his children.

Counsel did not inform Thompson that if he rejected the offer that any sentence imposed by the judge would be mandatory due to prior convictions.

Counsel knew that the offer made was being made by the judge herself and not the prosecution, but failed to file any motions to disqualify the judge despite having the knowledge that the judge should not initiate the plea bargain proceedings. Counsel knew the bias that the judge had formed for his client and was deficient in his representation.

Counsel expressed that Thompson should reject the plea, which Thompson did. After a trial, Thompson was sentenced to a mandatory 72 months with no possibility for early release. Counsels reasoning for denying the plea was a misunderstanding of law.

*Id.* at PageID 15.

**Ground Eight**: Appellant was subject to the ineffective assistance of counsel as guaranteed to him under both the Sixth and Fourteenth Amendments.

**Supporting Facts:**  The following is a Ground under ineffective assistance of counsel. Where the first claim (Ground Three) was ineffective assistance as well, ground three was centered around retained counsel Thomas Hansen's representation of Thompson and Ground Eight centers around court appointed trial counsel James Staton.

See Arguments above in Grounds 6 and 8 as well as .. .

Thompson's counsel had advised him to reject a plea agreement that was, not only beneficial to Thompson, but was a deal that Thompson was wanting to accept thus decreasing his amount of time in prison. Thompson's counsel was deficient in his duties by failing to file required motions.  Trial counsel also failed to object to statements

made by the prosecution during closing arguments that were not only highly prejudicial to Thompson, but were also considered to be the prosecutions personal opinion, and therefore Prosecutorial Misconduct.

After an investigation uncovered exculpatory evidence to contradict several important state witnesses, defense counsel failed to use the evidence discovered to impeach said witnesses and cast doubt on the testimony the witnesses provided. Burns had stated that Thompson was the first person he called upon leaving the scene of the crime because Thompson was his ride home. The state used this information repeatedly to show the jury that Thompson was the one Burns was calling because he was the accomplice. However, testimony of another witness and phone records showed that Thompson was not the first person Burns called, nor was he the second person he called. In fact Burns only called Thompson after his first options refused to come pick him up.

The investigation also uncovered employment records for Burns. State witness Kaitlyn Kerg contends that she was present for the planning of the burglary the night before the crime occurred. She claims to have been using several drugs including marijuana and xanax, as well as drinking alcohol during the planning and claims that Thompson took her back home before her curfew at 9:30 P.M. However, the employment records show that Burns was at work from 2 p.m. until 10 p.m. the night prior to the burglary thus Kerg could not have been present at a planning where Burns himself could not have been. Counsel did not impeach Kerg with the evidence and thus the jury was free to believe that the witness was present at the planning of the crime that occurred despite counsel's knowledge that the testimony was false.

Counsel also had at his disposal the transcripts available from the previous trial, as well as all of the police reports, and the proffer agreement between Burns and the state. The contents of the proffer agreement clearly state that a provision of the agreement was that Burns was to submitt [sic] to a polygraph exam to prove the truthfulness of his testimony against Thompson. Bruns testified that he never did submit to a polygraph exam in the first trial, so the judge redacted that portion of the agreement before the second trial began.

During Burns' testimony, in the second trial, Burns testified that not only had he informed others about this burglary plan, but that there were others present during the planning of the crime itself. Since Burns never mentioned this fact in any of his statements to the police

> or prosecution, and Burns never testified to this fact in the previus [sic] trial, Thompson's counsel would be deemed as ineffective for failing to impeach Burns' testimony under Impeachment by Omission.
>
> There was no physical evidence against Thompson and there was very little circumstancial [sic] evidence. The state's case against Thompson was based upon the testimony of two key witnesses and text messages sent between Thompson and Bathini. Thompson's counsel possessed several pieces of evidence and information to impeach those witnesses but failed to do so thus failing in his duties to represent Thompson and the prejudice that resulted is clear.

*Id.* at PageID 16-17.

> **Ground Nine:** The accumulation of errors in this case violate Thompson's right to due process.
>
> **Supporting Facts:** See above arguments.

*Id.* at PageID 18-19.

Petitioner sought to amend Ground Eight, but the Court rejected the amendment as untimely (ECF No. 101).

# Analysis

**Ground One: Denial of the Motion to Suppress**

In his First Ground for Relief, Thompson asserts the state court erred by denying his Motion to Suppress. Respondent asserts, on the basis of *Stone v. Powell*, 428 U.S. 465 (1976), that this ground for relief is not cognizable to the extent it raises Fourth Amendment claims and defends the Fifth Amendment claims on the merits (Return, ECF No. 12, PageID 2178).

In his Traverse, Thompson argues *Stone* is not applicable because he did not have a full and fair opportunity to litigate his Fourth Amendment claims in the state courts (ECF No. 88,

PageID 3099). This is so, he says, because the Sheriff's Office destroyed exculpatory evidence (video recordings from the dashboard camera in the cruiser). *Id.* Second, he claims, his attorney made several egregious errors in litigating the Motion to Suppress, errors rising to the level of ineffective assistance of trial counsel. *Id.* at PageID 3100. Third, the motion to suppress was decided by a judge who was biased against him. *Id.* at PageID 3101-02. After making these arguments, Thompson proceeds to argue the merits of the motion to suppress.

Federal habeas corpus relief is not available to state prisoners who allege they were convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that question in the state courts. *Stone v. Powell*, 428 U.S. 465 (1976). *Stone* requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does. The district court must also decide if a Petitioner's presentation of claim was frustrated because of a failure of the state mechanism. Habeas relief is allowed if an unanticipated and unforeseeable application of a procedural rule prevents state court consideration of merits. *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982). The *Riley* court, in discussing the concept of a "full and fair opportunity," held:

> The mechanism provided by the State of Ohio for resolution of Fourth Amendment claims is, in the abstract, clearly adequate. Ohio R. Crim. P. 12 provides an adequate opportunity to raise Fourth Amendment claims in the context of a pretrial motion to suppress, as is evident in the petitioner's use of that procedure. Further, a criminal defendant, who has unsuccessfully sought to suppress evidence, may take a direct appeal of that order, as of right, by filing a notice of appeal. See Ohio R. App. P. 3(A) and Ohio R. App. P. 5(A). These rules provide an adequate procedural mechanism for the litigation of Fourth Amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision.

*Id*. at 526.

Thompson presented denial of the motion to suppress as his Third Assignment of Error on direct appeal and the Second District decided it as follows:

[*P39]  The third assignment of error challenges the overruling of Thompson's motion to suppress on three grounds: (1) after the original trial judge recused himself, the second trial judge did not re-evaluate the motion to suppress; (2) the traffic stop was unconstitutionally prolonged; and (3) during the stop Thompson was not advised of his *Miranda* rights.

**The effect of recusal**

[*P40]  On Thompson's motion, the original judge in this case recused himself five months after he overruled Thompson's motion to suppress. [footnote omitted] Thompson filed a second motion to suppress, asking for a new hearing on the first motion because of the original judge's recusal. While there was no written ruling on the second motion, the new judge said at trial that the original judge "made his ruling, and I'm standing by his ruling. I'll note your continuing objection." (Trial Tr. 833). Thompson says that the new judge should have reconsidered the suppression issue because of the alleged bias that the original judge had against him.

[*P41]  The reason for the recusal is not entirely clear. Thompson says in his brief that the judge "recused himself after revealing a bias against the Appellant." But the basis of Thompson's recusal motion was that the judge had an *ex parte* conversation with the victim. According to Thompson, at the final pre-trial conference the judge said, "'I have talked privately with the victim in this case concerning the plea agreement for the co-defendant and [the judge] stated that he (the victim) really wants your man (Defendant-Thompson).'" Affidavit of Disqualification of Judge, 2. We are not convinced that this shows a bias against Thompson. Moreover, the trial court had overruled Thompson's motion to suppress on August 13, 2013, five months before the recusal. And in a motion to continue, that Thomson filed on November 25, 2013, it states that Burns pled on September 16, 2013, but the plea deal was apparently not complete until a Proffer Agreement was signed on October 25, 2013. Therefore whatever communication the victim may have had about the plea deal was well after the ruling on the suppression motion.

[*P42]  Also, a trial judge's recusal does not render void a suppression ruling made by that judge. Even a ruling made by a disqualified judge before being disqualified is not void.

13

*Griffith*, 54 Ohio St.2d 440, 442, 377 N.E.2d 775 (1978) ("Although a judge would be without power to hear and determine a cause after disqualification, his judgment, however erroneous, before disqualification is not void."); *Evans v. Dayton Newspapers, Inc.*, 57 Ohio App.3d 57, 58, 566 N.E.2d 704 (2d Dist.1989) (saying that "being informed that he [the judge] should not proceed did not render his pretrial orders void"). So the new judge in this case was not required to reconsider the suppression ruling. We turn now to that ruling.

### The length of the traffic stop

[*P43]  "Review of a trial court's ruling on a motion to suppress is 'a mixed question of law and fact.' *State v. Burnside*, 100 Ohio St. 3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We accept the trial court's factual findings as long as they are supported by competent, credible evidence. However, we review de novo the application of the law to these facts. " (Citations omitted.) *State v. Belton*, Ohio Sup. Ct. Slip Opinion No. 2016-Ohio-1581, ¶ 100.

[*P44]  "[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Rodriguez v. United States*, [575 U.S. 348], 135 S.Ct. 1609, 1612, 191 L.Ed.2d 492 (2015), quoting *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). "An officer * * * may conduct certain unrelated checks during an otherwise lawful traffic stop. But * * * he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id*. at 1615.

[*P45]  "[A] police officer who lacks probable cause but whose observations lead him reasonably to suspect that a particular person's behavior is criminal may detain the person briefly to investigate the circumstances that provoked the suspicion." *State v. Mays*, 119 Ohio St. 3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 13. "[T]he officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Id*. at ¶ 14. "'[T]he detention of a stopped driver may continue beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that

14

which prompted the initial stop.'" (Citations omitted.) *State v. Batchili*, 113 Ohio St. 3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 15, quoting *State v. Howard*, 12th Dist. Preble Nos. CA2006-02-002, CA2006-02-003, 2006-Ohio-5656, ¶ 16.

 [*P46]  There is no dispute that Deputy Baranyi's initial traffic stop of Thompson was lawful. Baranyi testified that he saw Thompson fail to come to a complete stop and saw that Thompson's truck was missing a front license plate. Thompson's problem with the stop concerns its length. He says that Deputy Baranyi's detention of him went well beyond the time period needed to issue a ticket and that no facts were articulated to allow for such a prolonged detention.

 [*P47]  Around 12:40 a.m., Baranyi stopped Thompson for the above-mentioned traffic violations, also suspecting that Thompson might be connected to the burglary that just occurred nearby. One of Deputy Baranyi's first questions to Thompson was where he was coming from and where he was headed. Thompson replied that he was coming from Bathini's house on Heather Hollow—the same street as the burglarized house. Baranyi asked Thompson to come back to his cruiser to talk further and to verify Thompson's story. Baranyi called Bathini, and she told him that while she knew Thompson, she was not at home and that she and Thompson had no plans to see each other that night. This made Deputy Baranyi even more suspicious. Consequently he called his supervisor and told him about the stop and the phone call. Baranyi then searched Thompson's truck and found a keycard to a hotel room at the America's Best Hotel and an invoice for work done at the burglarized house. Baranyi then talked to Maria Bateman about her encounter with Burns. Bateman said that the man asked her to give him a ride to Tim Horton's in Englewood. Thompson told Baranyi that he was with Burns earlier but had dropped him off. He said that Burns lived at the America's Best Hotel in Englewood. Deputy Baranyi relayed all this information to the other deputies investigating the burglary, telling them that a possible burglary suspect could be at the Tim Horton's in Englewood. When Detective Saunders heard all that was known about the burglary, he asked Deputy Baranyi to ask Thompson if he would come in for an interview, and Thompson agreed. It was 3:19 a.m. when Baranyi brought Thompson to the police station. So Thompson was detained for roughly two-and-a-half hours.

 [*P48]  Baranyi had reasonable, articulable suspicion that Thompson might be involved in the burglary. So Baranyi's detention of Thompson while he verified where Thompson had been was justified. Once Baranyi discovered that Thompson had lied about

where he had been, Baranyi's suspicion grew, justifying continued detention while he investigated the burglary. As time passed, Baranyi's suspicion continued to grow as he saw the invoice in Thompson's truck listing the phone number of the burglary call and heard Bateman's story. Additional facts kept coming to light that justified Deputy Baranyi's continued detention of Thompson. We believe this continued detention was reasonable under the evolving circumstances.

**Miranda**

[*P49] Deputy Baranyi did not advise Thompson of his *Miranda* rights because Baranyi did not consider Thompson in custody. When Thompson arrived at district headquarters, Detective Saunders told him that he was not under arrest. Saunders then talked to Thompson for five or ten minutes. Meanwhile, Burns arrived at the station. Saunders left Thompson and went to talk to Burns. After talking with him, Saunders decided to arrest Thompson, because their stories about what had happened that night were contradictory and also because of the items that Deputy Baranyi found in Thompson's truck. Saunders went back to Thompson, told him that he was under arrest, and handcuffed him. Before asking him any further questions, Saunders advised Thompson of his *Miranda* rights.

[*P50] Thompson contends that he was subject to custodial interrogation by Deputy Baranyi while he was in the police cruiser. Thompson says that Baranyi never told him that he was free to leave at any time. He notes that the doors on a police cruiser only open from the outside, severely limiting his freedom of movement. Thompson also points out that he was only allowed to exit the police cruiser once to use the restroom and that he was accompanied by two deputy sheriffs and afterwards was immediately put back in the cruiser. Thompson did not testify, so what he actually believed is unknown.

[*P51] *Miranda* warnings are required only before a suspect is subjected to custodial interrogation. "The determination whether a custodial interrogation has occurred requires an inquiry into how a reasonable man in the suspect's position would have understood his situation. * * * The ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree

16

associated with a formal arrest." *State v. Biros*, 78 Ohio St.3d 426, 440, 1997 Ohio 204, 678 N.E.2d 891 (1997). Typically, *Terry* stops do not rise to the level of detention requiring *Miranda* warnings. *State v. Healy*, 2d Dist. Montgomery No. 18232, 2000 Ohio App. LEXIS 3480, 2000 WL 1062197, *16 (Aug. 4, 2000), citing *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). But warnings are required if a person is subjected to treatment during the detention that renders him "in custody" for practical purposes. *State v. Strozier*, 172 Ohio App. 3d 780, 2007-Ohio-4575, 876 N.E.2d 1304, ¶ 18 (2d Dist.).

[*P52] It is unclear at what point Thompson is saying he was in custody for *Miranda* purposes. Certainly, he was not in custody immediately. As we have said, "[s]imply asking the motorist in that circumstance to sit in the rear of the police cruiser for a short period of time while answering a few questions or while a citation is issued does not convert the ordinary traffic stop into custodial interrogation." (Citations omitted.) *State v. Barnett*, 2d Dist. Montgomery No. 14019, 1994 Ohio App. LEXIS 4767, 1994 WL 567551, *4 (Aug. 31, 1994). Accord *State v. Engle*, 2d Dist. Montgomery No. 25226, 2013-Ohio-1818, ¶ 27 (saying that "instructing an individual to sit in a police cruiser does not convert the traffic stop into a custodial interrogation" and that "[m]any courts have found that this instruction is permissible for purposes of officer safety"). Even if *Miranda* warnings should have been given before they were, Thompson does not cite in his brief—and at oral arguments, could not point to—any specific statements that he made that prejudiced him.

[*P53] The third assignment of error is overruled.

*Thompson*, 2016-Ohio-7521.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceedings.

As can be seen from the Second District's decision, Thompson's claim that his opportunity to litigate his Fourth Amendment claim was not "full and fair" on the basis of the destruction of video recordings by the Sheriff's Office was not raised on direct appeal. Thompson has thus forfeited that claim. To put it another way, the Second District's disposition of the motion to suppress claim cannot be deemed unreasonable when it was not presented with the claim later made in habeas. Moreover, his assertion that the video recordings would be exculpatory is speculative.

The same result must be reached with Thompson's claim of ineffective assistance of trial counsel in presenting the motion to suppress: Thompson never asserted to the Second District that the motion to suppress should have been granted because its denial was based on counsel's errors. Even in his Traverse, Thompson does not enumerate what those errors were.

Finally, there is Thompson's claim that the motion to suppress was decided by a biased judge. Even this claim was not squarely presented to the Second District. Instead, Thompson asserted that because the first judge had recused himself, the second judge had to reconsider the suppression decision and the appellate court decided Ohio law did not require reconsideration. There is certainly no federal constitutional rule that requires reconsideration by a second judge after a first judge recuses himself or herself in a case.

Without doubt there is a Due Process right to have one's case decided by an unbiased judge. *Tumey v. Ohio*, 273 U.S. 510 (1927), *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009). A judge therefore has an ethical obligation to recuse himself or herself when he or she is biased. But there can be many other reasons for recusal besides bias against a particular litigant. For example, a judge may be required to recuse himself when he is the trustee of a university which has a conflict

of interest with one of the litigants. *Liteky v. United States,* 510 U.S. 540, 548 (1994). Here the Second District found the reason for Judge Singer's disqualification was unclear. *Thompson*, 2016-Ohio-7521 at ¶ 41. Thompson claimed it was after the first judge revealed a bias against him, but what the judge actually revealed was that he had had an *ex parte* conversation with the victim of the crime. *Ex parte* conversations are *per se* improper, whether or not they result in a bias, and this would have been an appropriate basis for recusal. In any event, as the Second District found and Thompson does not dispute, the decision on the motion to suppress happened months before the *ex parte* conversation, so that whatever the judge heard in the *ex parte* conversation cannot have been the source of bias in deciding the motion to suppress.

Thompson has not shown he was not given a full and fair opportunity to litigate his Fourth Amendment claims. Therefore *Stone v. Powell* bars this Court from reaching the merits of those claims in habeas corpus.

*Miranda v. Arizona*, 384 U.S. 436 (1966), involves the Fifth Amendment privilege against compelled self-incrimination rather than the Fourth Amendment. *Stone v. Powell* therefore does not bar merits consideration of Thompson's *Miranda* claims.

Considering the evidence presented at the suppression hearing, the Second District found that the length of Thompson's detention was reasonable, not because Deputy Baranyi needed that much time to issue a traffic citation for running a stop sign, but because Baranyi's suspicion that Thompson was involved in the burglary of Fox's home became more and more justified as Baranyi gathered more information from other sources and as Thompson's answers became less and less plausible.

Thompson argues the Second District's findings of fact about the stop are not entitled to deference, citing *Thompson v Keohane,* 516 U.S. 99 (1995). In that case the Supreme Court was

interpreting the version of 28 U.S.C. 2254(d) that was in effect prior to adoption of Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"). The current version of the statute requires deference to state court fact finding unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. The presumption language which formerly appeared in § 2254(d) has been moved to § 2254(e) and it can be overcome only by clear and convincing evidence that was in the state court record. *Cullen v. Pinholster*, 563 U.S. 170 (2011).

The question of whether statements made by a person who has been detained by police are voluntary or not is indeed a mixed question of law and fact as Justice Ginsburg noted in *Keohane, supra*. Prior to the adoption of the AEDPA, state court decisions on that question were reviewed *de novo. Hardin v. Straub,* 954 F.2d 1193, 1198 (6th Cir. 1992). But now, and since 1996, mixed questions of law and fact are reviewed under the "unreasonable application" prong of the AEDPA. *White v. Mitchell*, 431 F.3d 517 (6th Cir. 2005), *citing Barnes v. Elo,* 339 F.3d 496, 501 (6th Cir. 2003); *Mitchell v. Mason*, 325 F.3d 732, 738 (6th Cir. 2003), *citing Harpster v. Ohio* 128 F.3d 322, 327 (6th Cir. 1997) .

Reviewed under that standard, the Second District's decision on the *Miranda* claim was not an unreasonable application of that case and its progeny. As the Second District found, while Thompson's original stop was justified by a minor traffic infraction, Deputy Baranyi's suspicion that Thompson was involved in a neighboring burglary already being investigated was deepened by Thompson's lying statements about why he was parked in his truck near the burglary scene. Thompson never took the stand during the suppression hearing to deny Baranyi's account of the encounter. And he has not attempted to refute the Second District's finding that he had not pointed out on appeal which of his statements made to Baranyi was prejudicial.

The First Ground for Relief should be dismissed, because *Stone v. Powell* bars review of as to Fourth Amendment claims and the Second District's decision on the Fifth Amendment claims is not an objectively unreasonable application of *Miranda* and its progeny.

## Ground Two: Admission of Unauthenticated Text Messages

In his Second Ground for Relief, Thompson complains that the admission of improperly authenticated text messages violated his rights under the Confrontation Clause.

Respondent asserts Ground Two raises only an Ohio evidentiary law question and is therefore not cognizable in habeas corpus (Return, ECF No. 12, PageID 2178). Respondent further claims this ground for relief is procedurally defaulted and is without merit. *Id.*

Thompson raised his claim about admission of the text messages as his Fourth Assignment of Error on direct appeal and the Second District decided it as follows:

> [*P54] The fourth assignment of error alleges that the trial court erred by admitting text messages that Thompson sent to Bathini. Thompson contends that the messages are hearsay and were not properly authenticated and were unfairly prejudicial.
>
> [*P55] During Bathini's testimony, the State introduced some text messages from her cell phone that were sent between her and Thompson. Defense counsel objected, and a sidebar was held. The State told the judge that "the text messages show the nature of their relationship, the nature of, you know, the work that he did on the house, how that relationship developed, ended, what his financial situation was." (Trial Tr. 732). Defense counsel explained that his objection was on relevance grounds:
>
>> I think that that's several different things, Your Honor. It's—working on the house is one thing. The relationship he had with her romantically is another thing. His marital relationship with his wife was a third thing. The timeline would be a fourth thing. I'm not sure. Each text and each text string relates to a different one. There are some that

21

establish the timeline of when they met and that they knew each other. There are other text strings that would establish what—when he was working and what he was doing for the job. There's another text that may establish that they were having financial problems. There was another text that may, you know, solely deal with their romantic relationship. I think it would depend on what exactly the text is. All of them together aren't relevant to any one thing and would not be relevant to all of the things.

(Id.). Noting the defense's continuing objection, the trial court overruled the objection and admitted the messages.

[*P56]  Later during Bathini's testimony, defense counsel told the trial court that "a whole chunk" of text messages were not in the discovery packet from the State. (Id. at 749). Counsel appears to be objecting to the admission of the text messages because he did not receive some of them until that day.

[*P57]  Thompson contends that the text messages from Bathini's cell phone were hearsay, were not properly authenticated, and were unfairly prejudicial. But at trial Thompson did not object to the admission of the messages on any of these grounds. To be sure, he did object, but he did so on the grounds that they were not relevant and that he had not received them in discovery. Thompson acknowledges this but says that counsel entered a continuing objection to admission and that this is sufficient to preserve the issue for review.[footnote omitted] We disagree. An objection on one ground does not preserve an issue on a ground not raised in the objection. *State v. Barnes,* 10th Dist. Franklin No. 04AP-1133, 2005-Ohio-3279, ¶ 28, citing *State v. Davis,* 1 Ohio St.2d 28, 33, 203 N.E.2d 357 (1964).

[*P58]  Thompson did not object on hearsay, authentication or prejudice grounds when the error could have been addressed or cured. Although he did object to admission, Thompson did not raise these specific objections until this appeal. Because Thompson failed to object at trial on the specific ground raised here he has forfeited the issue limiting us to plain error analysis. *State v. Tibbetts*, 92 Ohio St.3d 146, 160-61, 2001 Ohio 132, 749 N.E.2d 226 (2001); Crim.R. 52(B). But even if Thompson had objected to the text messages' admission on the grounds he argues here, we would not find error, plain or otherwise. The text messages are not hearsay. They are party-opponent admissions properly authenticated by Bathini. Nor are the messages unfairly prejudicial.

[*P59] A statement is not hearsay if it "is offered against a party and is * * * the party's own statement." Evid.R. 801(D)(2)(a). "Courts have held that photographs of text messages sent from a defendant are not hearsay, instead they qualify as a party-opponent admission under Evid.R. 801(D)(2), as long as the statements are properly authenticated." *State v. Davis,* 12th Dist. Madison No. CA2015-05-015, 2016-Ohio-1166, ¶ 21, 61 N.E.3d 650, citing *State v. Bickerstaff,* 11th Dist. Ashtabula No. 2014-A-0054, 2015-Ohio-4014, ¶ 15; and State v. Shaw, 2013-Ohio-5292, 4 N.E.3d 406, ¶ 43, 4 N.E.3d 406 (7th Dist.). "[I]n most cases involving electronic print media, i.e., texts, instant messaging, and e-mails, the photographs taken of the print media or the printouts of those conversations are authenticated, introduced, and received into evidence through the testimony of the recipient of the messages." *State v. Roseberry,* 197 Ohio App. 3d 256, 2011-Ohio-5921, 967 N.E.2d 233, ¶ 73 (8th Dist.). "Therefore, statements from text messages are properly authenticated and are admissible as a party-opponent admission when the recipient of the messages identifies the messages as coming from the defendant." (Citation omitted.) *Davis* at ¶ 21. Here, Bathini recited the content of the text messages and identified which messages she sent and which were sent by Thompson. The messages were properly admitted through her testimony because she was the recipient, had personal knowledge of their content, and could identify the sender as Thompson.

[*P60] Thompson contends that the text messages were unfairly prejudicial because they were misleading. He says that they show only one side of the conversation and says that the only messages presented were those that show him at fault. Thompson says that other messages were not presented that would have shown context.

[*P61] Relevant evidence is inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury." Evid.R. 403(A). When determining whether evidence's probative value is "substantially outweighed" by the danger of prejudice, the evidence is viewed in a light most favorable to the proponent, maximizing its probative value and minimizing any prejudicial effect to the party opposing admission. *State v. Frazier,* 73 Ohio St.3d 323, 333, 1995 Ohio 235, 652 N.E.2d 1000 (1995); *State v. Durr,* 58 Ohio St. 3d 86, 92, 568 N.E.2d 674 (1991).

[*P62] Bathini specifically testified that the text messages that she discussed at trial were only some of the messages that she received from Thompson. So the jury knew that it was not hearing about every message that Thompson sent. Some messages that were

presented show that Thompson was having serious financial problems and needed a lot of money very quickly. Other messages suggest that Thompson and Bathini's relationship ended poorly. Bathini provided context for the messages that were presented by explaining what the conversations were about. We see little danger of unfair prejudice.

[*P63]  The fourth assignment of error is overruled.

*Thompson*, 2016-Ohio-7521.

As background, Shai Bathini was the house guest of the victim, Charles Fox, and Thompson's girlfriend. *Id.* at ¶ 10.  She had persuaded Fox to hire Thompson to do some work on the house in November 2012. *Id.* Bathini testified that Thompson was badly in need of money and blamed her for getting him into debt, such that their relationship ended in January 2013, shortly before the burglary.

From examination of the Thompson's Brief on Appeal (State Court Record ECF No. 11, Ex. 32) and Second District's opinion, it is clear Thompson never raised a Confrontation Clause claim in the state court.  On that basis, Ground Two is procedurally defaulted because it was never presented to the state courts.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional rights

claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

> "A claim may become procedurally defaulted in two ways." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id*.
>
> Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id*.

*Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013).

A petitioner can fail to meet procedural requirements in two ways:

25

> First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.
>
> Second, a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate review procedures. If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted.

*Smith v. Warden, Toledo Corr. Inst*., 2019 U.S. App. LEXIS 18196 * 19 (6th Cir. Jun. 18, 2019),

quoting *Lundgren v. Mitchell*, 440 F.3d 754, 806 (6th Cir. 2006)).

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright v. Sykes*, 433 U.S. 72 (1977). *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94, 97 (6th Cir.), *cert denied,* 474 U.S. 831 (1985). Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)(citations omitted). "Even if the state court failed to reject a claim on a procedural ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate procedures.'" *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009), citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)(quoting *O'Sullivan v. Boerckel,* 526 U.S. 838, 846-7(1999)); see also *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) ("A federal court is also barred from hearing issues that could have been raised in the state courts, but were not[.]"). The corollary to this rule is that where a petitioner raised a claim in the state court but in violation of a state's procedural rule, a state court must expressly reject the claim on that procedural ground for a federal court to deem

the claim defaulted. *See Williams*, 460 F.3d at 806 (noting that a state court's expressed rejection of a petitioner's claim on procedural basis and petitioner's complete failure to raise a claim in state court are the two ways a claim can be in procedural default).

Because Thompson never raised a Confrontation Clause claim in the Ohio courts, he cannot raise it now.  But even if he could, it would be meritless:  Bathini was present at trial and subject to cross-examination about her testimony.

Thompson's Second Ground for Relief does not state any other constitutional claim.  A party to a text message surely can authenticate it; she or he does not need to be the keeper of the record of the internet service provider on whose servers the messages are stored.  As the Second District noted, Thompson's side of those messages (the portions admitted) are not hearsay because they are admissions of a party opponent, excepted from the definition of hearsay by Ohio R.Evid.801(D)(2).  In any event, claims about authentication and hearsay are claims about errors in applying Ohio evidence law.  This Court is bound by state court interpretations of Ohio law. *Bradshaw v. Richey*, 546 U.S. 74 (2005).

Lastly, even as evidence claims, the hearsay and authentication claims are procedurally defaulted because, as the Second District noted, Thompson did not object on those bases, but rather on the basis of asserted irrelevance. *Thompson*, 2016-Ohio-7521 ¶ 58.  For that reason, the Second District reviewed them only for plain error. *Id.* Plain error review is enforcement of a procedural default, not a waiver of the failure to object. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001).

The Second Ground for Relief should therefore be dismissed.

**Ground Three: Ineffective Assistance of Retained Trial Counsel**

The Sixth Amendment protects a criminal defendant's right to the effective assistance of counsel, whether counsel is retained or appointed. In his Third Ground for Relief, Thompson accumulates his claims that his retained trial attorney, Thomas Hansen, provided ineffective assistance of trial counsel.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional

> assistance;  that is, the defendant must overcome the presumption
> that, under the circumstances, the challenged action "might be
> considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694.  See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether
> a court can be certain counsel's performance had no effect on the
> outcome or whether it is possible a reasonable doubt might have
> been established if counsel acted differently. See *Wong v.
> Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328
> (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052,
> 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably
> likely" the result would have been different. Id., at 696, 104 S. Ct.
> 2052, 80 L. Ed. 2d 674. This does not require a showing that
> counsel's actions "more likely than not altered the outcome," but the
> difference between *Strickland's* prejudice standard and a more-
> probable-than-not standard is slight and matters "only in the rarest
> case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The
> likelihood of a different result must be substantial, not just
> conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

All of Thompson's ineffective assistance of trial counsel claims raised on direct appeal related to the performance of Attorney James Staton who represented Thompson at the second

trial. None of the claims made in Ground Three were presented on direct appeal and indeed they could not have been because they rely on material that was not part of the direct appeal record. Under Ohio law, ineffective assistance of trial counsel claims which can be raised on direct appeal must be raised there or be barred by *res judicata* from presentation in later state court proceedings. *State v. Perry*, 10 Ohio St. 2d 175 (1967).

Ineffective assistance of trial counsel claims which could not be presented on appeal because they depended, as Thompson's Ground Three claims do, on evidence outside the appellate record must be presented by petition for post-conviction relief under Ohio Revised Code § 2953.21. Thompson does not claim that he presented these issues in that way. Instead, he asserts he presented them by raising a claim in his Application to Reopen his Direct Appeal, that his appellate counsel provided ineffective assistance of appellate counsel by not raising a claim that Thomas Hansen provided ineffective assistance of trial counsel in the pre-trial process (Traverse, ECF No. 88, PageID 3144).

But this argument is unpersuasive. An application to reopen a direct appeal must demonstrate ineffective assistance of appellate counsel based on that attorney's failure to raise assignments of error which depend on the appellate record. An Application to Reopen is not an opportunity to litigate issues which have been previously defaulted. Because claims of ineffective assistance of appellate counsel are based on an analytically distinct legal theory from the underlying claims, the 26(B) application does not preserve the underlying claims from default. *Scott v. Houk,* 760 F.3d 497, 505 (6th Cir. 2014); *Davie v. Mitchell,* 547 F.3d 297 (6th Cir. 2008)(Rogers, J.), and *Garner v. Mitchell,* 502 F.3d 394 (6th Cir. 2007)(Moore, J.), both citing *White v. Mitchell,* 431 F.3d 517, 526 (6th Cir. 2005); *Moore v. Mitchell,* 531 F. Supp. 2d 845, 862 (S.D. Ohio 2008)(Dlott, J.); see also *Bailey v. Nagle,* 172 F.3d 1299, 1309 n. 8 (11th Cir. 1999);

and *Levasseur v. Pepe*, 70 F.3d 187, 191-92 (1st Cir.  1995).

Thompson argues the merits of his Hansen ineffective assistance of trial counsel claim at length in his Traverse (ECF No. 88, PageID 3144-50).  But he does not show that he submitted this claim, and the evidence outside the direct appeal record, to the Ohio courts in a properly filed petition under Ohio Revised Code § 2953.21.

Thompson's Post-Conviction Petition is in the State Court Record (ECF No. 11, Ex. 54). He lists six affidavits as attached to support his claims. *Id.* at PageID 787.  In the body of the Petition, he discusses the asserted ineffective assistance of trial counsel of James Staton. *Id.* at PageID 783-87.  See also Ground Two at PageID 790-92.  It was Staton's alleged ineffectiveness that Judge Gorman understood Thompson was litigating (Decision, State Court Record 11-1, Ex. 57).  Thompson's own Affidavit in support is about the asserted deficiencies in Staton's performance. *Id.* at PageID 807-08.

In sum, Thompson's Third Ground for Relief is procedurally defaulted for failure to present it to the state courts.


**Ground Four:  Ineffective Assistance of Appellate Counsel**


In his Fourth Ground for Relief, Thompson argues he received ineffective assistance of appellate counsel on direct appeal.  As pleaded here, the claims are vague:  appellate counsel did not take enough time, failed to present "a complete record of the assignments of error," and "failed to fully investigate the claims in which Thompson had his Constitutional Rights violated." Thompson does not say how much time he believes was required, which assignments were omitted, and which claims were not fully investigated."

Thompson presented his claims of ineffective assistance of appellate counsel to the Second District in his Application for Reopening under Ohio R. App.26(B)(State Court Record, ECF No. 11, Ex. 44). In denying that Application, the Second District noted that many of the claims being raised had already been raised on direct appeal and were barred from being present again by *res judicata*. (Decision, State Court Record, ECF No. 11-1). In addition, as for the non-barred assignments, the court found Thompson failed to show he had been prejudiced by their omission. *Id.* at PageID 732. The Second District reiterated its conclusions on reconsideration. *Id.* at Ex. 49.

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008).

The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id*., *citing Wilson.* If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id., citing Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments

on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); see *Smith v. Murray*, 477 U.S. 527 (1986). "Only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of [appellate] counsel be overcome." *Dufresne v. Palmer*, 876 F.3d 248 (6th Cir. 2017), quoting *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674(6th Cir. 2000), citing *Strickland* and *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004), *citing Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001), *cert. denied,* 535 U.S. 940 (2002). "Counsel's performance is strongly presumed to be effective." *McFarland, quoting Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000)(*citing Strickland*). "To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented." *Webb v. Mitchell,* 586 F.3d 383, 399 (6th Cir. 2009); *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

AEDPA deference applies to state courts' decisions on the merits of ineffective assistance of appellate counsel claims. To prevail in habeas, Thompson must show that the Second District's rejection of his 26(B) Application was an objectively unreasonable application of *Strickland* as it

applies at the appellate level.

In his Traverse Thompson makes no argument at all on the merits of Ground Four, instead asserting merely that it is not procedurally defaulted (ECF No. 88, PageID 3085, 3200). The Magistrate Judge agrees that the claim is preserved for review, but the review is not *de novo*. Instead, Thompson must show the Second District's decision is an objectively unreasonable application of *Strickland*. He has not even made an argument to that effect. Ground Four must therefore be dismissed with prejudice.

**Ground Five: Bias by the Trial Judge**

In his Fifth Ground for Relief, Thompson asserts the trial judge was biased against him[2]. Thompson argues "cumulative" bias by which the Magistrate Judge understands he means to assert there are several examples of conduct by the trial judge which demonstrate bias.

Respondent notes that trial judge bias was raised on direct appeal under the argument that Thompson was punished for going to trial instead of pleading. He further notes that the issue of trial judge bias raised in the Application to Reopen does not preserve and underlying claim of bias (Return, ECF No. 12, PageID 2179).

Thompson raised the claim that he was punished for going to trial as his sixth Assignment of Error on direct appeal and the Second District decided it as follows:

> **E. Punishment for going to trial**
>
> [*P79] The sixth assignment of error alleges that the trial judge punished Thompson by enhancing his sentence for exercising his right to a jury trial.

___

[2] The claim here is against the judge who eventually tried the case, The Honorable Barbara Pugliese Gorman, as opposed to The Honorable Gregory Singer, the judge who heard the motion to suppress and later recused himself, presumably because of *ex parte* conversation with the victim.

[*P80]  "It is beyond dispute that a defendant cannot be punished for refusing to plead guilty and exercising his right to a trial. 'Accordingly, when imposing a sentence, a trial court may not be influenced by the fact that a defendant exercised his right to put the government to its proof rather than pleading guilty.' Where the record [**44] creates an inference that a defendant's sentence was enhanced because he elected to put the government to its proof, we have looked for additional evidence dispelling the inference and unequivocally explaining the trial court's sentencing decision." (Citations omitted.) *State v. Anderson,* 2d Dist. Montgomery No. 26525, 2016-Ohio-135, ¶ 7, quoting *State v. Blanton,* 2d Dist. Montgomery No. 18923, 2002-Ohio-1794, 2002 WL 538869, *2-3.

[*P81]  Thompson says that the trial judge made angry statements that were meant to deter him from proceeding to trial. The judge was, according to Thompson, irritated because he was not convicted in the first trial and by the circumstances leading to the hung jury. The judge made a comment referring to PTSD because of the first trial. Thompson asserts that the judge also said that she was convinced that Thompson had interfered with the jury. Lastly, Thompson says that the judge's attitude toward him tended to manipulate the jury into finding him guilty.

[*P82]  The statements that Thompson cites were made during voir dire and at the end of the trial. The statements made during voir dire occurred at a sidebar after the State had finished questioning the prospective jurors. The judge asked defense counsel how long his questioning would take:

THE COURT: How long do you think you'll be?
MR. STATON [Defense counsel]: Not as long as that.
MS. AMRHEIN [for the State]: Sorry.
MR. STATON: That's all right. You got more stuff to do.
THE COURT: No, no, that's fine. Half hour, 45 minutes?
MR. STATON: Yeah, something like that.
THE COURT: Okay. We'll take 15 minutes. I know I don't have to say this, but again remember, I've got my PTSD from the last trial.
MR. STATON: No twitching.
THE COURT: Make sure your client and his mom do not mingle with the prospective jurors.
MR. STATON: Oh, certainly.
THE COURT: Okay. I—
MR. STATON: I will certainly do that.

THE COURT: I have no idea like I said, last time they did not have a whole lot of restrictions on them so I'm not implying anything about them. I just want to be careful.

MR. STATON: Sure.

THE COURT: Okay.

(Trial Tr. 180-181).

The end-of-trial statements were made right after the jury was discharged:

THE COURT: * * * The Court has reviewed the verdict entry. It is filled in ink, signed by all 12 jurors and the Court orders that the judicial assistant file it forthwith.

Okay. You can be seated.

At this time, I am going to revoke the Defendant's bond, taking him into custody and put this on for sentencing on Wednesday at 11:00, okay?

* * *

THE COURT: Any[thing] further, Defense counsel?

MR. STATON: Your Honor, we would ask the Court consider to continuing bond until sentencing. Our—

THE COURT: No.

MR. STATON: —client is at a low flight risk in this matter. He hasn't been out in years since this—

THE COURT: He's been out for a long time. He has a number of previous convictions. I don't think that would be appropriate. We'll do the sentencing on Wednesday.

THE DEFENDANT: I've got my kids, and work, and all that stuff. I've got to get back.

UNIDENTIFIED SPEAKER: It's over. Let's go.

THE DEFENDANT: [F***].

THE COURT: For attorneys, I'm going to go talk to the lawyers. I don't know if any of you want to come back.

THE DEFENDANT: Fine. I don't do—

THE COURT: I will talk to—

THE DEFENDANT: —it to you.

THE COURT: —them first. Ask if you want to come—

THE DEFENDANT: I didn't do it to you.

THE COURT: —if you do, fine. If you—

THE DEFENDANT: I don't care what you—

THE COURT: —don't, that's fine, too.

THE DEFENDANT: —think.

THE COURT: And I don't know if they're going to want to talk to you or not.

(Id. at 1108-1109).

[*P83] We do not believe that any of these statements come close to creating an inference that Thompson's sentence was enhanced because he exercised his right to a trial. The judge never suggested that she thought that Thompson had interfered with the jury. And the jury could not have been affected by any of the statements because the jury did not hear any of them.

[*P84] The sixth assignment of error is overruled.

*Thompson*, 2016-Ohio-7521. Thus the claim on direct appeal was not a general claim of judicial bias, but a specific claim that the sentence was increased because Thompson insisted on going to trial instead of accepting a plea bargain. The question of whether the sentence was increased because Thompson went to trial is a question of fact and the Second District's decision that the cited passages from the transcript did not support that inference is entitled to deference; Thompson has not overcome it with reference to facts in the state court record which showed that it is in error.

In the Petition, Thompson adds the claim that Judge Gorman initiated plea negotiations. He provides no record references at all to show this happened. In his Traverse, he cites *Murchu v. United States,* 926 F.2d 50 (1st Cir. 1991), in which the federal First Circuit Court of Appeals enforced Fed. R. Crim.11 P. 11(e) which forbids a federal trial judge presiding over a federal criminal case from participating in plea negotiations. However, in *Murchu* the First Circuit was enforcing a procedural rule adopted by the Supreme Court, not a constitutional rule. The United States Constitution does not flatly prohibit a trial judge's participation in plea negotiations and neither do the Ohio Rules of Criminal Procedure.

Thompson claims the trial judge threatened his attorney, but he provides no evidentiary basis for that claim, nor any reference to any place where he raised that claim in the state court proceedings.

Thompson raised the issue of disqualifying Judge Gorman in his 26(B) Application, but the Second District noted it had no jurisdiction over that question because the disqualification of a Common Pleas Judge must be presented to the Chief Justice of the Supreme Court of Ohio by affidavit

(Decision, State Court Record, ECF No. 11-1, Ex. 47, PageID 735-36).  Thompson claims in the Petition that he filed such an affidavit, but gives no record reference.  If he did in fact file an Affidavit of Disqualification, Chief Justice O'Connor evidently overruled it, finding Judge Gorman was not disqualified by bias.  The Chief Justice's decision is entitled to deference under 28 U.S.C. § 2254(d) just as any other state court decision would be.

Finally, Thompson claims Judge Gorman displayed bias by stating she believed the prosecution over defense counsel in overruling a claimed *Brady v. Maryland* violation.  Again, no record references are given, so this Court cannot determine whether the ruling was correct or incorrect.  However, it is in the very essence of a trial judge's job to decide evidentiary objections and it is not inappropriate to state the basis.  Comparing the credibility of witnesses and attorneys is at the core of a trial judge's responsibility.

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."

*Liteky v. United States,* 510 U.S. 540, 554-55 (1994); *see also Alley v. Bell*, 307 F.3d 380, 388 (6th Cir. 2002)(quoting the deep-seated favoritism or antagonism standard).  The *Liteky* Court went on to hold:

> *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display.  A judge's ordinary efforts at courtroom administration — even a stern and short-tempered judge's ordinary efforts at courtroom administration — remain immune.

510 U.S. at 555.

The Fifth Ground for Relief should therefore be dismissed with prejudice.

**Ground Six:  Prosecutorial Misconduct**

In his Sixth Ground for Relief, Thompson claims the prosecutor engaged in unconstitutional misconduct in the following ways:  (1) showing pages of text messages between Bathini and Thompson to the jury which had not been disclosed in discovery; (2) making untrue statements in closing argument "that Thompson had told Detective Saunder that he knew police were in the area and when they shined their lights in his truck, he ducked down to avoid being seen"; (3) The prosecutor in conclusion instructed the jury to remember what Burns told Detective Saunders, "Yeah I did it. And I did it with Craig Thompson"; (4) improper service of the sentencing memorandum on Thompson's prior counsel.

Respondent asserts this claim is procedurally defaulted because it was never presented to the state courts as a stand-alone claim of prosecutorial misconduct.  Thompson responds "Ground six was presented to the state courts under ineffective assistance of appellate counsel for failing to file a direct [appeal] on winning issues such as ineffective assistance of trial counsel for failure to object to the prosecutorial misconduct, and prosecutor misconduct on its own merits." (Traverse, ECF No. 88, PageID 3200.)

Presentation of a claim as an underlying claim of ineffective assistance of trial counsel or ineffective assistance of appellate counsel does not preserve the merits of the claim for habeas review.  All of the asserted instances of prosecutorial misconduct were provable from the appellate record and so should have been raised on direct appeal.  In denying Thompson's claim that it was ineffective assistance of appellate counsel to fail to raise these claims, the Second District pointed out that it had already decided on direct appeal that the prosecutor's comment about Burns's testimony was a fair summary of the evidence and that he had failed in his 26(B) application to

point to any specific prosecutorial comments which he thought were prejudicial (Decision and Entry, State Court Record, ECF No. 11-1, Ex. 47). Thompson has not shown that this Decision was an objectively unreasonable application of *Strickland*. In *Serra v. Michigan Dept of Corrections*, 4 F.3d 1348 (6th Cir. 1993), the court identified factors to be weighed in considering prosecutorial misconduct claims:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Id.* at 1355-56, *quoting Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982)(citation omitted). The misconduct must be so gross as probably to prejudice the defendant. *Prichett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.), *cert. denied*, 522 U.S. 1001 (1997)(citation omitted); *United States v. Ashworth*, 836 F.2d 260, 267 (6th Cir. 1988). Claims of prosecutorial misconduct are reviewed deferentially in habeas. *Thompkins v. Berghuis*, 547 F.3d 572 (6th Cir. 2008), rev'd on other grounds, 560 U.S. 370 (2010), *citing Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004), *cert. denied*, 544 U.S. 921 (2005).

Thompson did not preserve any stand-alone claims of prosecutorial misconduct by objecting at trial. On direct appeal the Second District applied plain error review, thereby enforcing the Ohio contemporaneous objection rule. The Sixth Circuit has many times held that rule is an adequate and independent ground of state court decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d

239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982).  *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 562 U.S. 876 (2010).  Claims procedurally defaulted by failure of contemporary objection cannot be resurrected by including them as underlying claims in a 26(B) application, whose sole purpose is to raise claims of ineffective assistance of appellate counsel.

Thompson's Sixth Ground for Relief should therefore be dismissed.


**Ground Seven:  Ineffective Assistance of Trial Counsel in Plea Negotiations**


In his Seventh Ground for Relief, Thompson claims he received ineffective assistance of trial counsel when James Staton did not advise him to accept an offer of an agreed sentence of thirty-six months.  He asserts Staton did not tell him that a sentence after trial would be mandatory or that the trial judge initiated the plea offer.  Instead, he asserts Staton advised trying the case.

Respondent notes this claim was raised in post-conviction and rejected by the trial court and court of appeals on the grounds there was no proof of record that there ever had been such an offer (Return, ECF No. 12, PageID 2180-81).  Thompson responds in his Traverse:

> Ground seven regarding a void sentence and ineffective assistance of counsel premised on a plea offer was dismissed in Thompson's post-conviction petition. The Second District then REVERSED that decision and sent the case back to the trial court. The trial court then allowed Thompson to renew his arguments and submit additional evidence where Thompson submitted an affidavit from trial counsel James Staton. This affidavit shows the trial judge offered Thompson a deal in return for his plea of guilty. (CR. 935)
>
> The trial court then adjudicated the case by denying Thompson's petition and granted Summary Judgment to the State. This was done

> after a writ of procedendo was filed by Thompson on May 10, 2019.
> Thompson filed a timely notice of appeal and presented his claims
> to the Second District.

(ECF No. 88, PageID 3086).

> Ground seven, is facial [sic] sufficient to warrant relief, or an
> evidentiary hearing to establish the prejudice by counsel for failing
> to advise Thompson to accept the plea. *Smith v United States,* 348
> F.3d 545 (6th Cir. 2003) (remanding . .. for evidentiary hearing on
> whether counsel was ineffective for failing to advise movant to
> accept government's plea offer.)

(ECF No. 88, PageID 3201).

As proof of the offered plea bargain, Thompson cites Attorney Staton's Affidavit of

February 15, 2018, and his own Affidavit of January 5, 2017, along with affidavits of other family

members. (State Court Record, ECF No. 11-1, PageID 933-35, attached to Appellant's Brief, State

Court Record, Ex. 62.) Judge Gorman considered this evidence after remand from the Second

District reversing her first grant of summary judgment to the State and rejected this claim because

the State averred that no such offer had ever been made (Decision, State Court Record, ECF No.

69, PageID 2729).

On appeal the Second District found no reversible error in Judge Gorman's decision that

Staton did not provide ineffective assistance of trial counsel by advising that the case was winnable

at trial, assuming he did give that advice, particularly in light of the mistrial that occurred the first

time the case was tried. *State v. Thompson*, 2019-Ohio-5140 (Ohio App. 2d Dist. Dec. 13,

2019)(copy at Decision, State Court Record, ECF No. 69, PageID 2869.) The Second District also

upheld Judge Gorman's credibility findings in that the affiants were Thompson's family members

and the supposed plea offer was not plausible because Thompson faced mandatory prison time

because of prior convictions. *Id.* at ¶ 30. Even assuming the plea offer had been made, it would

not have been professionally incompetent advice to recommend rejecting it because the case

42

seemed reasonably winnable at trial. *Id.* at ¶ 33. Thompson makes many claims about the weakness of the State's case, to wit, that there was no physical evidence against him and the case was largely circumstantial. If Thompson has as good a case as he himself seems to believe, how could it have been bad advice to try the case?

Thompson has not shown that this decision of the Second District is an objectively unreasonable application of *Strickland*. Staton ended up not winning on the admission of Bathini's text messages, but it was a strong enough argument that independent appellate counsel repeated it on appeal. Staton's projection that witness Kerg's testimony would not be believed by the jury was a reasonable projection under the circumstances, since her line-up identification of Thompson was shaky.

Requesting an evidentiary hearing on this ground to show prejudice, Thompson relies on precedent from 2003 which was effectively overruled by *Pinholster, supra.*

Ground Seven should therefore be dismissed with prejudice.


**Ground Eight: Ineffective Assistance of Counsel**


In his Eighth Ground for Relief, Thompson claims he received ineffective assistance of trial counsel from trial attorney James Staton in the following ways: (1) advice to reject a plea offer; (2) failure to object to prosecutor's comments in closing; (3) failure to use exculpatory evidence to show Thompson was not the first person Burns called after leaving the victim's home; (4) failure to use Burns' employment records to impeach Kaitlyn Kerg's testimony that she was present when Burns and Thompson planned the burglary; (5) failure to use Burns's proffer to show that he had not taken a polygraph examination as he had agreed; (6) failure to use "several

[unspecified] "pieces of evidence" to impeach Bathini and other witnesses." These sub-claims are extracted from the statement of supporting facts in the Petition (ECF No. 1, PageID 16-17.)

However, in the Traverse Thompson argues completely different claims of ineffective assistance of trial counsel: Dereliction of duty (Sub-claim One); Failure to investigate witnesses (Sub-claim Two); Failure to file pre-trial motions (Sub-claim Three); Erroneous Admission of Alleged Facts (Sub-claim Four); Allowing Bias [sic] Juror to be seated (Sub-claim Five); *Cronic* Analysis (Sub-claim Six); Erroneous stipulation (Sub-claim Seven); Unprofessional misconduct (Sub-claim Eight); Failure to object to preserve the record (Sub-claim Nine)(ECF No. 88, PageID 3187-98).

With the exception of that portion of Sub-claim Nine which complains of Attorney Staton's failure to object to the prosecutor's comments in closing, none of claims made in Thompson's Traverse are included in the Petition. A district court may decline to review a claim a petitioner raises for the first time in his traverse or reply. *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011), *citing Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005). All portions of Ground Eight except the claim about failing to object during closing should be dismissed on this basis.

Moreover, the Court has already held Thompson's proposed amendment to Ground Eight was barred by the statute of limitations because it did not relate back to the original Petition (ECF No. 101). Thompson's Traverse was filed June 29, 2020; the Petition has been filed more than two years earlier on April 12, 2018. These sub-claims added in the Traverse no more relate back to the original filing than the one Thompson attempted to add by formal amendment.

Staton's failure to object during the prosecutor's closing was evident on the face of the appellate record. Thompson did plead a claim of ineffective assistance of trial counsel as his Fifth Assignment of Error on direct appeal, but out of three pages devoted to arguing this Assignment,

presented exactly one sentence on this particular claim of ineffective assistance of trial counsel: "Finally, Counsel did not properly object to the State making false statements in closing arguments. (RE: Trans. Vol. 5 Page ID# 1087; 1-25)" (Appellant's Brief, State Court Record, ECF No. 11, Ex. 32, PageID 453.)

The Second District expended more ink on deciding this sub-claim than Thompson did in presenting it to them.  The appellate court held:

> [*P73]  Thompson claims that counsel was deficient for not
> objecting to false statements made by the State in its closing
> arguments. The prosecutor told the jury that Thompson "went back
> to the headquarters and gave inconsistent statements but admitted
> that when the police shined their light, he ducked down." (Trial Tr.
> 1085). Thompson asserts that Detective Saunders, to whom he made
> the admission, never said this. Thompson is incorrect. Saunders
> testified that Thompson admitted lying back: "* * * He [Thompson]
> stated that he[] remembered the deputies pulling onto the street and
> remembered the deputy shining the light in the car but stated that the
> deputy must not have saw him, and that [he] kind of laid back in the
> car." (*Id*. at 834). Counsel cannot be faulted for not objecting to the
> prosecutor's reasonable summary of the evidence.

Thompson, 2016-Ohio-7521.  This is obviously not an unreasonable application of *Strickland*.

Ground Eight should therefore be dismissed with prejudice.


**Ground Nine:  Cumulative Error**


In his Ninth Ground for Relief, Thompson claims he should be granted relief based on the cumulative errors enumerated in the other Grounds for Relief (Petition, ECF No. 1, PageID 18-19).  Respondent asserts that a cumulative error claim is not cognizable in habeas (Return, ECF No. 12, PageID 2217, citing *Williams v. Anderson,* 460 F.3d 789, 816-817 (6th Cir. 2006), and *Caudill v. Conover,* No. 14-5418, 2016 U.S. App. LEXIS 24161 (6th Cir. 2016) (unpublished) at *21.

Thompson responds by citing *Kyles v Whitley,* 514 U.S. 419 (1995), and *Williams v Taylor,*

529 U.S. 362 (2000)(Traverse, ECF No. 88, PageID 3199). In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Kyles*, 514 U.S. at 432 (1995) (quoting *Brady*, 373 U.S. at 87). *Kyles* also held that the materiality of any evidence withheld in violation of *Brady* must be determined by considering all the evidence presented at trial. This of course requires accumulating *Brady* errors, but then weighing the withheld evidence against the evidence suppressed. This is not the same as holding, for example, that one *Brady* error is not enough for relief but three could be. *Williams* also did not involve accumulating errors, but rather counsel's obligation to address the evidence as a whole.

In *Williams v. Anderson*, cited by Respondent, the authoring judge would much have preferred being able to accumulate errors to grant relief. However, the Court held "Nonetheless, the law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue. See *Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005) (discussing cumulated evidentiary errors)." 460 F. 3d at 816. The law not changed since. See *Sheppard v. Bagley*, 657 F.3d 338, 348 (6ᵗʰ Cir. 2011), *cert. denied,* 132 S.Ct. 2751 (2011), *citing Moore v. Parker,* 425 F.3d 250, 256 (6ᵗʰ Cir. 2005), *cert. denied sub nom. Moore v. Simpson,* 549 U.S. 1027 (2006); *Moreland v. Bradshaw,* 699 F.3d 908, 931 (6ᵗʰ Cir. 2012), *cert. denied sub nom. Moreland v. Robinson,* 134 S. Ct. 110 (2013). See also *Ahmed v. Houk*, 2014 U.S. Dist. LEXIS 81971, *332 (S.D. Ohio 2014).

Thompson's Ninth Ground for Relief should be dismissed as non-cognizable in habeas corpus.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

August 31, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.